NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FMC CORPORATION,** | **Civil Action No. 07-5409 (JAP)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **B. EUGENE GUTHERY,** | |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge,**

Presently before the Court is Defendant B. Eugene Guthery's ("Guthery") Motion to disqualify Connolly Bove Lodge & Hutz, LLP ("Connolly Bove") and Francis DiGiovanni as counsel for Plaintiff FMC Corporation ("FMC"). The Court has fully reviewed the parties' arguments made in support of and in opposition to Guthery's Motion, and considers Guthery's Motion without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons set forth more fully below, Guthery's Motion is DENIED.

## I.      Background

This litigation stems from the parties' dispute regarding the proper inventorship of FMC's U.S. Patent No. 5,632,676 (the "'676 patent"), entitled "Use of Peracetic Acid to Sanitize Processed Fowl." Guthery claims that he conceived of the idea of using peracetic acid to sanitize poultry while experimenting in his home during the 1990's. Further, Guthery claims to have disclosed his idea to FMC in or around September 1992 when he contacted them to obtain samples of peracetic acid. Specifically, Guthery claims to have disclosed his idea to use peracetic acid to sanitize poultry to Ms. Lisa Kurschner, the FMC scientist with whom he

communicated to obtain samples of peracetic acid for his experimentation.

On October 12, 1993, FMC filed the '676 patent with the United States Patent and Trademark Office ("USPTO").  Ms. Kurshner and Mr. Diken, another FMC scientist, are the sole inventors listed on the '676 patent, which was granted on May 27, 2008.  Defendant claims through his communications to Ms. Kurshner, he contributed to the conception of the sanitation methods described and claimed in the '676 patent.

In 2006, in an unrelated patent litigation between FMC and EcoLab, Inc. (the "*EcoLab v. FMC* litigation"), FMC took Guthery's deposition.  Guthery claims that during discovery in that unrelated matter, FMC learned that Guthery might have a claim against it relating to the '676 patent, and consequently, at the deposition, FMC questioned Guthery regarding the '676 patent.  Based on what occurred at the deposition, Guthery explored his rights with respect to the '676 patent, and on November 8, 2007 he, through counsel, sent a letter to FMC threatening suit unless FMC added Guthery as an inventor on the '676 patent.  After receiving that correspondence, FMC filed its Complaint against Guthery in this matter in which FMC seeks a judgment declaring that:

> (a) Guthery is not an inventor of any inventions claimed in U.S. Patent 5,632,676 . . ., which is owned by FMC, and that no correction of inventorship is appropriate pursuant to 35 U.S.C. § 256 or any other section of 35 U.S.C. § 1, *et seq*.; (b) the '676 patent is neither invalid nor unenforceable due to any alleged prior inventions of Guthery in the field of poultry sanitization; (c) FMC did not misappropriate any information belonging to Guthery; (d) FMC's actions with regard to Guthery did not and do not constitute unfair competition under either common law or the laws of any state; and (e) Guthery is entitled to no relief by reason of any actions undertaken by FMC in relation to Guthery and the '676 patent.

2

(Pl. Cmplt. ¶ 1).

The instant Motion to disqualify counsel arises out of Guthery's interaction with FMC's counsel, Connolly Bove, in the *EcoLab v. FMC* litigation.  In that litigation, FMC served a subpoena *duces tecum* upon non-party Guthery seeking to obtain testimony and documents from him regarding EcoLab's '729 patent.  Guthery claims that as a result of their interaction in the *EcoLab v. FMC* litigation, Connolly Bove created an implied attorney client relationship with him and that, consequently, New Jersey Rules of Professional Conduct ("RPCs") 1.7(a) and 1.9(a)(1) require that the firm be disqualified from representing FMC in this litigation.  Guthery argues that despite the fact that there was no formal attorney retention agreement between himself and Connolly Bove, Connolly Bove treated him like a client and led him to believe that they would protect his interests both during and after the deposition.  Further, Guthery argues that prior to his deposition, in discussing various matters with Connolly Bove, he disclosed confidential information to them regarding his other inventions and research projects in the field of poultry sanitation.  Similarly, Guthery claims that Connolly Bove received and still maintains his confidential records.  Guthery also argues that even if Connolly Bove's conduct did not create an implied attorney client relationship with him, it nevertheless rises to the level of a duty of care to him.

In addition, Guthery argues that Connolly Bove must be disqualified because one of the firm's attorneys, Francis DiGiovanni ("DiGiovanni"), will be called as a necessary fact witness in this matter.  Indeed, Guthery argues that he intends to call DiGiovanni as a witness to testify about the fact that DiGiovanni indicated that Guthery was the first to invent a poultry sanitizing solution that used peracetic acid and that EcoLab had taken Guthery's invention.  Guthery argues

that these statements are admissions made by FMC, which will contradict FMC's claim that its inventors independently developed the '676 patent without assistance from Guthery.

FMC opposes Guthery's Motion that Connolly Bove be disqualified.  FMC argues that there was no implied attorney client relationship because Guthery did not disclose confidential information to FMC and it certainly did not do so under the reasonable belief that Connolly Bove was acting as his attorney.  With respect to any alleged confidential disclosures, FMC argues that information pertaining to Guthery's sanitization method using acetic acid is not confidential as it is the subjection of Guthery's own patents.  FMC also argues that while Guthery claims to have disclosed confidential information about other inventions and research projects to DiGiovanni, Guthery fails to describe same with any amount of specificity.  Indeed, FMC claims that Guthery failed to identify any specific confidential communications or information that he allegedly shared with DiGiovanni that could be relevant to the inventorship of the '676 patent.  Further, FMC argues that Guthery's sworn testimony taken during his depositions in the *EcoLab v. FMC* litigation contradicts Guthery's assertion that he disclosed confidential information to DiGiovanni while communicating with DiGiovanni in connection with that litigation.  Similarly, with respect to post deposition communications with Guthery, FMC argues that Guthery was seeking to pursue a business relationship with FMC and contacted DiGiovanni knowing that DiGiovanni represented FMC.  Indeed, FMC argues that as Guthery admits, DiGiovanni specifically told Guthery not to make any confidential disclosures.  Further, FMC argues that the fact that Guthery provided documents to Connolly Bove pursuant to a subpoena did not make it reasonable for Guthery to believe that an attorney client relationship had been created.  In addition, FMC notes that Guthery did not request that the documents he produced be marked

4

confidential.  FMC also notes that Guthery's documents were produced to EcoLab during the *EcoLab v. FMC* litigation and that a copy of same have been provided to Guthery's attorney in this matter.

FMC also argues that Guthery did not have a reasonable belief that the disclosures he made to Connolly Bove were made pursuant to an attorney client relationship.  In this regard, FMC argues that during Guthery's August 2006 and October 2006 depositions in the *EcoLab v. FMC* litigation, Guthery testified unequivocally that DiGiovanni and Connolly Bove did not represent him.  Further, FMC argues that during the time in question, Guthery had retained his own attorneys.  In addition, FMC argues that DiGiovanni's interaction with Guthery prior, during and after the *EcoLab v. FMC* litigation depositions did not create an implied attorney client relationship.

Additionally, FMC argues that even if an implied attorney client relationship had been formed and even if Guthery had disclosed confidential information to Connolly Bove, disqualification would not be required.  In this regard, FMC argues that any information disclosed during the *EcoLab v. FMC* litigation is not substantially related to whether Guthery is an inventor of the sanitization process disclosed in the '676 patent.

Further, FMC argues that Guthery's intent to call DiGiovanni as a witness should not result in Connolly Bove's disqualification.  FMC notes that RPC 3.7 only prevents an attorney from acting as an attorney and necessary fact witness at trial.  FMC also argues that the testimony Guthery seeks to illicit is inadmissible and has no probative value, is speculative and would involve hearsay.  In addition, FMC claims that even if Guthery were correct and DiGiovanni should be disqualified pursuant to RPC 3.7 (which FMC argues is not the case), there is no

5

reason why the entire Connolly Bove firm need be disqualified and Guthery's argument to the contrary is nonsensical.

Finally, FMC argues that Guthery waived his right to seek to disqualify DiGiovanni and Connolly Bove. Specifically, FMC claims that Guthery waited approximately ten months until the eve of FMC's filing of its Motion to Dismiss before he sought to have Connolly Bove disqualified. FMC argues that Guthery's delay is undue and unjustified and that FMC would be prejudiced if Connolly Bove is disqualified.

## II.   Analysis

In this District, questions of professional ethics are governed by L.Civ.R. 103.1(a), which provides that the RPCs are to be used to resolve same. See *Carlyle Towers Condo. Ass'n v. Crossland Sav.*, 944 F.Supp. 341, 345 (D.N.J. 1996). In interpreting the RPCs, the Court looks to New Jersey's state courts' interpretations of them as primary authority and modifies that interpretation when required or permitted by federal law. L.Civ.R. 103.1(a); *see Steel v. General Motors,* 912 F.Supp. 724 (D.N.J. 1995).

When considering a motion to disqualify counsel, the movant bears the burden of proving that disqualification is appropriate because the RPCs were violated. *See Maldonado v. New Jersey*, 225 F.R.D. 120, 136-37 (D.N.J. 2004). Further, the movant's burden is a heavy one as "[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J. 1993) (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) (internal quotation marks and citation omitted)). As a result, in determining whether to disqualify counsel, the Court must closely and carefully

scrutinize the facts of each case to prevent unjust results.  *See Montgomery Acad. v. Kohn*, 50 F.Supp.2d 344, 349 (D.N.J. 1999).  Further, given the fact sensitive nature of motions to disqualify counsel, the Court cannot blindly apply the RPCs without any consideration of the parties' relative hardships.  *Id*. (citing *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F.Supp. 1121, 1126 (N.D. Ohio 1990)).  Instead, the Court must "balance the need to maintain the highest standards of the [legal] profession against a client's right to freely choose his counsel."  *Steel*, 912 F. Supp. at 733 (internal quotation marks and citations omitted).  However, if there is any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification.  *Maldonado*, 225 F.R.D. at 137.

Here Guthery generally claims that Connolly Bove should be disqualified because they violated RPCs 1.7, 1.9, and 3.7.  These arguments are addressed in turn below.

### A.      Disqualification under RPCs 1.7 and 1.9

New Jersey's courts have held that "[o]ne of the most basic responsibilities incumbent on a lawyer is the duty of loyalty to his or her clients.  From that duty issues the prohibition against representing clients with conflicting interests."  *Matter of Opinion No. 653*, 132 N.J. 124, 129 (1993); *accord In re Opinion 682*, 147 N.J. 360, 368 (1997).  The RPCs codify this ethical duty in RPC 1.7, which requires an attorney uphold to his client "undivided loyalty and allegiance."  *Kramer v. Ciba-Geigy Corp.*, 371 N.J. Super. 580, 598 (App. Div. 2004) (internal quotation marks and citation omitted).  Specifically, RPC 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse

7

to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

RPC 1.9 builds on RPC 1.7 and makes clear that conflicts of interest are not limited to the simultaneous representation of clients, but may also exist due to representation of former clients. According to RPC 1.9:

(a) A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

To determine whether a conflict exists under RPC 1.9, the Court employs the "substantial relationship test" under which each of the following three prongs must be satisfied before the Court shall disqualify an attorney: (1) the existence of a past attorney client relationship involving the attorney sought to be disqualified; (2) that the current representation involves the same or a matter substantially related to the former representation; and (3) that the interests of the attorney's current client are materially adverse to the interests of the former client. *Bagdan v. Beck*, 140 F.R.D. 660, 668 (D.N.J. 1991); *see Home Care Indus., Inc. v. Murray*, 154 F.Supp.2d 861, 866 (D.N.J. 2001); *Host Marriott Corp. v. Fast Food Operators, Inc.*, 891 F.Supp. 1002, 1007 (D.N.J. 1995).

Before an attorney will be disqualified due to a conflict under either RPC 1.7(a) or 1.9(a), the moving party must establish that an attorney client relationship existed between the movant and attorney(s) at issue.  An attorney client relationship can be either express or implied.  Here

the parties dispute whether an attorney client relationship existed between Guthery and Connolly Bove.  While it is clear that no express relationship existed between Guthery and Connolly Bove, that fact alone is not dispositive because the relationship could have been implied.  *See Montgomery Acad.*, 50 F.Supp.2d at 350; *Tormo v. Yormark*, 398 F.Supp. 1159, 1169 (D.N.J. 1975) (noting that "[n]either contractual formality nor compensation or expectation of compensation is required" to find existence of attorney client relationship).  To establish an implied attorney client relationship, Guthery must show "'(1) that [he] submitted confidential information to a lawyer, and (2) that [he] did so with the reasonable belief that the lawyer was acting as [his] attorney.'"  *Montgomery Acad.*, 50 F.Supp.2d at 350 (quoting *Pain Prevention Lab, Inc. v Electronic Waveform Labs, Inc.*, 657 F.Supp. 1486, 1495 (N.D.Ill. 1987).

Here, the Court is not convinced that Guthery provided confidential information to Connolly Bove.  With respect to the documents provided to Connolly Bove, the Court notes that Guthery produced these documents pursuant to a subpoena *duces tecum* and that when he produced them he did not request that they be marked "confidential."  In addition, to the extent the documents provided to Connolly Bove related to Guthery's sanitization method using acetic acid, which is the subject of Guthery's patents, such information is not confidential.  Further, Guthery fails to describe with any amount of specificity which of the documents he produced are confidential and why.  Guthery's general references to the over 1500 pages of documents he produced to Connolly Bove are not sufficient.  Nor are his conclusory statements that contained in said documents is confidential information regarding his inventions in poultry sanitation using peracetic acid and other innovations in the health and chemical technology areas.

Similarly, the Court finds that Guthery has failed to establish that he disclosed

9

confidential information to Connolly Bove during his oral communications with DiGiovanni before and after his depositions in the *EcoLab v. FMC* litigation.  While, Guthery claims to have received general advice about patent law as well as specific legal advice such as they type of questions he could expect to be asked by EcoLab during his deposition from DiGiovanni, the Court finds that there is nothing confidential regarding a general discussion of patent law; nor is there about the type of questions likely to be posed at a third party deposition.  Further, under the circumstances presented here, the Court finds that such discussions do not amount to the rendering of legal advice or the formation of an attorney client relationship.

Further, the Court is unimpressed by Guthery's arguments regarding his discussions about inventorship with Connolly Bove.  While Guthery claims to have discussed confidential matters such as the legal issue of inventorship with DiGiovanni, the Court notes that these discussions stemmed from Guthery's published article entitled "A Game of Chicken," which addressed Guthery's previous interactions with EcoLab and EcoLab's claims that it invented Guthery's formulas.  Guthery, has failed to set forth any reasons why discussions concerning his inventorship of the EcoLab patents would be confidential.  Likewise, Guthery has also failed to establish that he discussed other confidential matters with DiGiovanni.  While Guthery references discussions regarding his other inventions and processing techniques under development as well as ideas regarding future research projects, the Court finds these general statements to be insufficient. Thus, even if the Court were to credit Guthery's assertion that Connolly Bove never instructed Guthery to refrain from disclosing confidential information regarding same, which FMC contests, that would be of no moment because Guthery has failed to show that confidential information was in fact disclosed.  As previously stated, motions to

disqualify counsel necessitate a fact specific inquiry. Here, Guthery's broad generalizations do not carry his heavy burden. The Court also notes that Guthery's sworn deposition testimony contradicts his argument that he disclosed confidential information to Connolly Bove.

However, even if the Court were to assume that Connolly Bove received confidential information from Guthery, the Court would nonetheless still find that there existed no implied attorney client relationship because it was not reasonable for Guthery to believe that DiGiovanni was acting as his attorney. Here, Guthery received a subpoena in the *EcoLab v. FMC* litigation that identified DiGiovanni as an attorney for FMC. Also, after Guthery produced documents to FMC pursuant to that subpoena, Guthery's personal attorney, Mark Brewer, Esq., contacted DiGiovanni via e-mail, copying Guthery, and wrote that he represented Guthery, stated that Guthery had informed him of DiGiovanni's representation of FMC and requested that a copy of the documents produced by Guthery pursuant to the subpoena be sent to him along with a copy of the complaint and answer in the *EcoLab v. FMC* litigation. Further, DiGiovanni informed Guthery that he did not represent him. Indeed, the fact that DiGiovanni did not represent Guthery was repeated several times by DiGiovanni, EcoLab's counsel and Guthery himself during Guthery's depositions in the *EcoLab v. FMC* litigation. (*See generally*, 8/9/06 Guthery Transcript at 12:4-8, 22:8-16, 28:16 - 35:1; 10/16/06 Guthery Transcript at 33:21 - 34:3, 184:21 - 186:10, 188:6-8). While not dispositive of the issue, the fact that Guthery gave sworn testimony in which he flatly stated that he was not represented by DiGiovanni is certainly poignant. (*See* 8/9/06 Guthery Transcript at 12:4-8).

Also relevant is the fact that Guthery's personal lawyer, Jim Haltom, Esq., attended part of Guthery's October 2006 deposition. While it is plain that Mr. Haltom did not attend the

11

October 2006 deposition in its entirety and that he was there simply to listen and not to ask questions, the fact that Guthery had personal attorneys is relevant to the question of whether it was reasonable for him to believe that DiGiovanni was acting as his attorney.  As is the fact that Guthery had previously sued EcoLab on a patent claim and was therefore not unfamiliar with the patent litigation process.

Further, the Court notes that in making objections during Guthery's depositions that clearly could be viewed as being made on Guthery's behalf, for example when DiGiovanni objected to questioning by EcoLab that could have resulted in Guthery implicating himself criminally, DiGiovanni specifically pointed out that he did not represent Guthery.  (*See*, *e.g.*, 10/16/06 Guthery Transcript at 184:21 - 186:10).  Moreover, the fact that Guthery may have believed that other objections made by DiGiovanni were being made on his behalf is not controlling.  DiGiovanni represented FMC and was objecting to protect FMC's interests.  While DiGiovanni's objections may have also benefitted Guthery, that fact alone, while relevant to the inquiry, does not mean that an attorney client relationship had been formed.  Rather, the focus is on whether in the context of the entirety of this case it was reasonable for Guthery to believe that an attorney client relationship existed.

Under the circumstances presented here, the Court finds that it was unreasonable for Guthery to believe that DiGiovanni and Connolly Bove were acting as his attorneys.  While the Court understands that Guthery subjectively may have believed that there was an attorney client relationship, Guthery's subjective belief is not dispositive.  Here, while DiGiovanni may have extended certain courtesies to Guthery, the Court finds that it would have been unreasonable for Guthery to believe that DiGiovanni and Connolly Bove were acting as his attorneys.

Consequently, no attorney client relationship (either express or implied) existed between Guthery and Connolly Bove.  As a result, there has been no violation of either RPC 1.7 or 1.9.  Further, the Court finds that Connolly Bove did not violate its duty of care with respect to Guthery.

### B.  Disqualification under RPC 3.7

RPC 3.7 provides that:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
>
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> > (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

RPC 3.7 was implemented to prevent a situation in which a lawyer at trial acts as an attorney and a witness, thus "creating the danger that the fact finder (particularly if it is a jury) may confuse what is testimony and what is argument, and otherwise creating an unseemly appearance at trial." *Main Events Prod., LLC v. Lacey*, 220 F.Supp.2d 353, 357 (D.N.J. 2002).  Pursuant to RPC 3.7, an attorney's testimony is considered "necessary" if concealing it would prejudice the client or prevent the court from making a just decision.  *See State v.Dayton*, 292 N.J. Super. 76, 86 (App. Div. 1996) (citing *Freeman v. Vicchiarelli*, 827 F.Supp. 300, 306 (D.N.J. 1993)).

Here Guthery seeks to have DiGiovanni and the entire Connolly Bove law firm disqualified under RPC 3.7.  Guthery claims that DiGiovanni will be a necessary fact witness

because Guthery intends to call him to testify (1) about the fact that he indicated that "Guthery was the first to invent the processes at issue and Dr. Guthery's invention of using PAA to sanitize meet (including poultry) had been taken by EcoLab[;]" (2) that it was Guthery's "idea to sanitize meet and poultry using PAA[;]" and (3) about "the reasons for [Guthery's] change in his previously-maintained position regarding misinventorship of FMC's patent at issue and the interactions with FMC's representatives at Connolly Bove that led to any delays in pursuing his claims." (Pl. Br. at 22-23). Further, Guthery argues that the entire Connolly Bove firm should be disqualified because DiGiovanni is a partner at Connolly Bove and "has undoubtedly been in close communication with his partners and other attorneys at his firm who were also involved in the Ecolab case." (*Id*. at 23-24). Thus while DiGiovanni was the individual who met with Guthery, Guthery argues that all of Connolly Bove should be disqualified because he believes that DiGiovanni likely shared the information he acquired from Guthery with his partners and associates. In this regard, Guthery claims that in addition to DiGiovanni, Rudolph Hutz is a Connolly Bove "attorney[] that [is] believed to have factual information relevant to the instant case." (Pl. Reply Br. at 13).

FMC objects to Guthery's request to have DiGiovanni and Connolly Bove disqualified under RPC 3.7. FMC notes that RPC 3.7 only prevents an attorney from advocating "*at [a] trial*" in which the attorney will likely be a necessary fact witness. (Opp. Br. at 25 (Emphasis in original)). In addition, FMC argues that the alleged testimony that Guthery seeks to obtain from DiGiovanni lacks probative value, is speculative, is hearsay and would be inadmissible. Consequently, FMC argues that DiGiovanni will not likely be a necessary fact witness and that, as a result, disqualification pursuant to RPC 3.7 is not justified. Further, FMC argues that

Guthery's claim that the entire Connollly Bove law firm should be disqualified under RPC 3.7 is supported neither by the RPCs nor caselaw.

Under the facts presented by this case, the Court finds that it is not appropriate at this time to disqualify either DiGiovanni or Connolly Bove pursuant to RPC 3.7.  The Court notes that RPC 3.7 only prevents an attorney from acting as an advocate at a trial in which he is likely to be a necessary witness.  Here, the Court is not convinced that DiGiovanni will likely be a necessary witness.  While Guthery puts forth several reasons why DiGiovanni's testimony will be needed, FMC objects to each of Guthery's proposed bases.  While the Court does not now decide whether the testimony sought to be obtained by Guthery is admissible, the Court finds that FMC's objections to the proposed testimony are not frivolous and they certainly raise an issue as to whether DiGiovanni's testimony will likely be necessary.  Regardless, even if DiGiovanni's testimony ultimately becomes necessary, that would only prevent him from advocating as an attorney for FMC at the trial of this matter.  Because it does not appear likely at this juncture that DiGiovanni will be a necessary witness and because even if a necessary witness, RPC 3.7 only prevents DiGiovanni from advocating as an attorney at the trial of this matter, the Court shall permit DiGiovanni to continue to represent FMC in this case.  FMC is, however, put on notice that should circumstances change and it appear that DiGiovanni will likely be a necessary witness, then DiGiovanni may be disqualified from acting as an advocate at trial under RPC 3.7.

Further, since the Court finds that disqualification of DiGiovanni pursuant to RPC 3.7 is not warranted at this time, the Court similarly finds that Connolly Bove should not be disqualified under RPC 3.7.  In addition, the Court notes that even if DiGiovanni had been disqualified under RPC 3.7, the Court still would not have disqualified all of Connolly Bove

under the same rule.  Indeed, under the circumstances of this case, where no attorney from

Connolly Bove has been precluded from representing FMC under either RPC 1.7 or 1.9, the

express terms of RPC 3.7(b) permits Connolly Bove to continue to represent FMC even if

DiGiovanni had been precluded under 3.7(a).  Guthery's arguments to the contrary are meritless.

Similarly, Guthery's conclusory statement that Rudolph Hutz ("Hutz") has "factual information

relevant to the instant case" does not establish that Hutz or Connonly Bove should be

disqualified as counsel for FMC.  (Pl. Reply Br. at 13).

### C. Waiver of Right to Seek Disqualification

Because the Court has determined that disqualification of DiGiovanni and Connolly Bove

is not appropriate, the Court does not reach the issue of whether Guthery waived his right to seek

that relief.

## III. Conclusion

For the reasons stated above, the Court finds that Guthery has failed to meet his burden in

establishing a violation of the RPCs that would require the disqualification of DiGiovanni and/or

Connolly Bove.  Therefore, Guthery's Motion to disqualify counsel is DENIED.  An appropriate

Order follows.


Dated: February 24, 2009


       s/Tonianne J. Bongiovanni
       **HONORABLE TONIANNE J. BONGIOVANNI**
       **UNITED STATES MAGISTRATE JUDGE**