NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FMC CORPORATION, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 07-5409 (JAP) |
| v. : | |
| : | |
| B. EUGENE GUTHERY, : | **OPINION** |
| : | |
| Defendant. : | |
| : | |

PISANO, District Judge:

Presently before the Court is Plaintiff FMC Corporation's ("FMC") motion to dismiss Defendant B. Eugene Guthery's ("Guthery") four counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6). FMC filed the instant declaratory judgment suit on November 11, 2007. Guthery filed a mirror-image action in the Eastern District of Texas on December 12, 2007, which was subsequently transferred to this Court and consolidated with the instant action by this Court's Order dated December 17, 2008. (Docket Entry No. 43.)

**I.      Background**

This litigation stems from the parties' dispute regarding the proper inventorship of FMC's U.S. Patent No. 5,632,676 (the "'676 Patent"), entitled "Use of Peracetic Acid[1] to Sanitize Processed Fowl." Defendant Guthery alleges that he conceived the idea of using peracetic acid to sanitize poultry carcasses while he carried out experiments at his Oklahoma home during the

---

[1]      The substance is also known as "peroxyacetic acid."

1990's.  Guthery claims that he disclosed his idea to FMC, a corporation with a research and development team located in New Jersey, during a 1992 phone call with Ms. Lisa Kurschner, an FMC scientist.  Guthery called requesting a quantity of peracetic acid from FMC, a commercial supplier of the substance, to experiment with the acid's effect in a poultry sanitation formulation Guthery had been developing.  When he first called FMC, Guthery was instructed that he needed Kurschner's approval to place an order for the acid because the substance could be explosive and is thus subject to a series of safety regulations.  During the call with Kurschner, and in response to Kurschner's inquiry, Guthery explained his purposes in seeking the acid, "including a detailed explanation of his work on poultry and his intention to use the peroxyacetic acid to improve the kill of bacteria on poultry."  (Def.'s Counterclaim, ¶ 12.)

On October 12, 1993, FMC filed the '676 patent with the United States Patent and Trademark Office ("USPTO"), listing Ms. Kurschner and Dr. George Diken, another FMC scientist, as the patent's sole inventors.  The USPTO granted FMC the '676 Patent on May 27, 1997.  Guthery alleges that, through his phone calls and facsimiles to Ms. Kurschner, he contributed to the conception of the invention and should have ben included as an inventor.  Following the 1992 communications, it appears that there was no contact between FMC and Guthery until sometime in 2005.

In 2006, in a patent action between FMC and a competitor, EcoLab, Inc., FMC requested Guthery's deposition to obtain testimony regarding FMC's claim that the EcoLab patent-in-suit was invalid.[2]  Guthery claims that during discovery of the FMC-EcoLab matter, FMC learned

---

[2]     Guthery had pursued his own legal action against EcoLab in 2000, alleging that EcoLab had misappropriated Guthery's poultry sanitation processing invention in breach of a confidential disclosure agreement Guthery had entered into with the company in 1998.  In

that Guthery might have a claim against FMC relating to the '676 Patent and, consequently, FMC asked him questions regarding the '676 Patent during his deposition.  Guthery alleged that prior to his deposition, FMC received "over 1500 pages of Dr. Guthery['s] original records and other confidential disclosures . . . regarding his inventorship activities relevant to the patents asserted in the Eco[L]ab case and the present case." (Def.'s Opp'n 10.)  Moreover, Guthery claims that when he "mentioned his potential inventorship rights and his contacts with Ms. Kurschner during his conversations with FMC's counsel in 2005 to 2006, he was told by FMC's counsel . . . that he should 'wait' until the FMC v. Eco[L]abs case concluded before addressing those or any other issues with FMC." (*Id.* at 11.)

Based on the events at the deposition, Guthery subsequently retained counsel who sent FMC a letter dated November 8, 2007, attaching a proposed Complaint and threatening suit unless Guthery was added as an inventor on the '676 Patent.  FMC initiated the instant litigation shortly thereafter on November 11, 2007, seeking a judgment declaring the enforceability of the '676 Patent, that Guthery is not an inventor of the '676 Patent, and that FMC neither misappropriated Guthery's ideas nor unfairly competed with Guthery regarding the '676 Patent.  Guthery filed a related action the following month in the Eastern District of Texas, which was subsequently transferred to this Court.

---

connection with this litigation, Guthery prepared a document dated March 2000 in which he states that the '676 Patent was his idea. (Exhibit E to Declaration of Chad S.C. Stover in Support of FMC's Opening Brief in Support of its Motion to Dismiss ("Stover Decl."); *see also* Def.'s Opp'n 1, 7.) As part of the 2001 settlement of this litigation, Guthery signed a Consent Judgment "which inaccurately disavowed any claim to ownership or inventorship over Eco[L]ab's patents. The disavowal in the Consent Judgment was inaccurate, as recognized by [FMC] in the . . . [subsequent FMC-EcoLab] litigation . . . – a battle that would pit each company's PAA poultry sanitation patents against each other." (Def.'s Opp'n 7.)

-3-

Guthery has advanced four counterclaims against FMC: (1) correction of inventorship to the '676 Patent pursuant to 35 U.S.C. § 256; (2) if the '676 Patent cannot be corrected to include Guthery as an inventor, then a declaration of invalidity/unenforceability of the '676 Patent pursuant to 35 U.S.C. § 256 and/or § 102(f); (3) misappropriation, under Texas common law, of Guthery's information regarding the use of peracetic acid in the '676 Patent; and (4) unfair competition under Texas common law.  FMC now moves to dismiss these counterclaims, alleging that the doctrine of laches bars Guthery's inventorship counterclaim, and that the state law causes of action are barred by the applicable statutes of limitation.  Further, FMC maintains that because there is no case or controversy between the parties regarding infringement of the '676 Patent, Guthery lacks standing to contest the validity and/or enforceability of the patent.

## II.   Discussion

### A.   Standard of Review

In support of its motion, FMC submitted fifteen exhibits that had not been appended to the pleadings (Docket Entry No. 34), and submitted five additional exhibits in connection with its reply brief.  (Docket Entry No. 42.)  In support of his opposition to FMC's motion, Dr. Guthery provided the Court with nine exhibits that were also not appended to the pleadings. (Docket Entry No. 41.)  Both parties agree that the instant motion should be decided based on these supplemental submissions.  (Pl.'s Br. 5; Def.'s Opp'n 12-13; Pl.'s Reply 1 n.1.)  However, because these materials are outside the pleadings, and because the Court determines that in adjudicating this motion it wishes to consider those supplemental materials,[3] the Court must

---

[3]   It is well-established that an affirmative defense such as the expiration of the statute of limitations may provide a basis for dismissal on a Rule 12(b)(6) motion only in those situations where the defense is "apparent on the face of the complaint." *Benak v. Alliance*

convert the instant motion into one for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are critical or "material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party

---

*Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006) ("[A] statute of limitations defense is an affirmative one, and in order to undergird a dismissal, must appear on the face of the complaint."); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (limitations defense may be raised on a motion under Rule 12(b)(6) "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations") (internal citations and quotations omitted); *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) ("[I]f a statute of limitations bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).") (internal quotations omitted).  Analysis of an affirmative defense of laches in the patent context requires similar transparency.  *See, e.g., Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161 ("The strictures of Rule 12(b)(6), wherein dismissal of the claim is based solely on the complainant's pleadings, are not readily applicable to a determination of laches.  Although a Rule 12(b)(6) motion may be grounded on an affirmative defense, the defense of laches usually requires factual development beyond the content of the complaint.").

makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, and not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but rather determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

   **B.**  **Correction of Inventorship Counterclaim and the Doctrine of Laches**

Guthery's first counterclaim seeks a correction of inventorship under 35 U.S.C. § 256 which provides for the addition of an erroneously omitted inventor to an issued patent. Guthery asserts that because of his alleged "contribution" to the development of the '676 Patent, in the form of his 1992 telephone call with Kurschner, the '676 Patent should be corrected to include him as an inventor. FMC contends that this claim is barred by the doctrine of laches, because Guthery's delay in pursuing this claim.

The equitable defense of laches affords a district court discretion to bar a claimant from "bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *A.C.*

*Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1029, 1032 (Fed. Cir. 1992) (further holding that "[t]he application of laches is committed to the sound discretion of the trial court"). In addition to patent infringement challenges, inventorship claims are also subject to the laches defense. *See Serdaveric v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008). In determining the applicability of the laches defense, the Federal Circuit has directed district courts to consider whether "(a) the [claimant's] delay in bringing suit was unreasonable and inexcusable, and [whether] (b) the [adverse party] suffered material prejudice attributable to the delay." *A.C. Aukerman Co.*, 960 F.2d at 1028. Further, "a delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1163 (Fed Cir. 1993). The presumption requires the district court to infer unreasonable delay and resulting prejudice. *See A.C. Aukerman Co.*, 960 F.2d at 1037. This presumption can be rebutted if the claimant raises a genuine factual issue that the delay was reasonable or excusable or offers "evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" *See Serdaveric*, 532 F.3d at 1359-60 (quoting *A.C. Aukerman Co.*, 960 F.2d at 1038). If the presumption is overcome, the adverse party must affirmatively prove both elements of laches by a preponderance of the evidence. *Church & Dwight Co., Inc. v. Abbott Labs.*, 2008 WL 5416383, *5 (D.N.J. Dec. 23, 2008) (citing *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992)).

According to the Federal Circuit, "the period of delay is measured from when the claimant had actual notice of the claim or would have reasonably expected to inquire about the subject matter." *Advanced Cardiovascular Sys., Inc.*, 988 F.2d at 1161. FMC has offered three

different times at which the laches period began: (1) in 1997, when the '676 Patent was issued and Guthery was thus on "constructive notice" that he had been omitted as an inventor of the patent; (2) in 1998, when Guthery allegedly described the '676 Patent in a letter, and thus would have been on notice of the omission; or (3) in 2000, when during his dispute with EcoLab, Guthery claimed that the '676 Patent had been his idea. Under any of these scenarios, the laches presumption would attach. Given the incredible number of patents filed yearly, the Court will not charge Guthery with notice of his claim due to the mere issuance of the '676 Patent in 1997. Additionally, FMC has failed to provide supporting evidence that Guthery was on notice of the '676 Patent in 1998.[4] As Guthery has conceded that the laches period began to run, at latest, in 2000 when he became "aware . . . that FMC should have included [him] as a co-inventor if they used [Guthery's idea] of employing PAA in a direct contact chicken sanitation solution," (Def.'s Opp'n 15), the Court concludes that 2000 shall be the operative date from which the laches period commenced. Therefore, the laches presumption applies because more than six years elapsed between when Guthery admitted he knew of his inventorship rights and when he filed suit in December 2007. *See A.C. Aukerman Co.*, 960 F.2d at 1034 (noting that the six year period for laches begins with the claimant's knowledge of the infringement and counts forward).

Some recognized excuses for justifiable delay that operate to rebut the laches presumption include "other litigation; negotiations with the accused; possibly poverty and illness under limited circumstances; wartime conditions; extent of infringement; and dispute over ownership of the patent." *A.C. Aukerman Co.*, 960 F.2d at 1033 (internal citations omitted).

---

[4] The document FMC cites to support this assertion does not seem to address the '676 Patent. (*See* Stover Decl., Ex. C.)

Guthery contends that his delay in filing suit was reasonable or excusable and the laches presumption is thereby rebutted. Specifically, Guthery suggests that throughout 2000 and 2001, his litigation with EcoLab "occupied his time and strained his financial resources." (Def.'s Opp'n 16.) Further, he maintains that his poor health "ma[de] it extremely difficult for him to pursue stressful situations, such as a patent lawsuit." (*Id.*) Neither explanation provides a cognizable justification for the delay sufficient to rebut the presumption of laches. Guthery's involvement in litigation with EcoLab does not provide him with a sufficient excuse because he failed to provide notice to FMC that he intended to litigate his rights under the '676 Patent at the conclusion of his EcoLab litigation. *See, e.g., Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 877 (Fed. Cir. 1991) (holding that notice to the alleged infringer is the key to finding excusable delay, and noting that "[f]or other litigation to excuse a delay in bringing suit, there must be adequate notice of the proceedings to the accused infringer. The notice must also inform the alleged infringer of the patentee's intention to enforce its patent upon completion of that proceeding." (internal citations omitted)). As for Guthery's health-related excuse, this Court finds this excuse to be unsubstantiated and insufficient because Guthery has not provided any detail as to the effect or duration of his claimed ailments. The Court further holds that even if Guthery had provided evidentiary support of his illnesses, such ailments as migraines and asthma cannot excuse the over six year delay in filing suit. Moreover, "illness" is not typically recognized as a reasonable excuse in the laches context for patent suits. *See, e.g., Whitehall Corp. v. Western Geophysical Co. of America,* 664 F. Supp. 1056, 1073 (S.D. Tex. 1986) ("Illness is not generally recognized as an adequate excuse for a plaintiff's delay in bringing suit"); *Seghers v. Gardella*, 55 F. Supp. 914, 915 (N.D. Ohio 1944) (where the court

found plaintiff guilty of laches, noting, "[t]he evidence as to [plaintiff's] other activities during the time tends to invalidate the excuse; but even if it is conceded that he had a heart ailment which might have been affected by the excitement of a trial, still his action should have been commenced. If due consideration for his health required a continuation of the case, the court could have postponed the trial and the rights of the parties would have remained as they were at the time of filing the complaint.").

A claimant can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the adverse party. *See Serdaveric*, 532 F.3d at 1359-60. Though the burden is on Guthery to demonstrate that FMC suffered no prejudice as a result of his delay in filing suit in order to defeat the presumption of laches,[5] the Court notes that FMC has demonstrated material prejudice, and Guthery has failed to offer any countervailing argument or evidence and has therefore failed to raise a genuine issue of fact regarding prejudice to FMC. Material prejudice may be in the form of either or both economic and evidentiary prejudice. *A.C. Aukerman Co.*, 960 F.2d at 1033. Evidentiary prejudice may arise where the delay has curtailed the defendant's ability to present a full and fair defense on the merits due to the loss of evidence, the death of a witness, or the unreliability of memories. *See id.* In this case, FMC has shown that a key witness, Ms. Kurschner, is no longer an FMC employee and currently resides in Florida. (Stover Decl., Ex. H.) Further, Kurschner has testified that she has no recollection of the 1992 telephone call upon which Guthery bases his claims. (*Id.*) Finally, as part of its regular document retention policy, FMC no longer possesses the paperwork related to the alleged 1992

---

[5] *Serdaveric*, 532 F.3d at 1359 ("Once the presumption of laches has attached, the defendants could . . . remain[] *utterly mute* on the issue of prejudice and nonetheless pevail[].").

shipment to Guthery of peracetic acid.  All of these factors taken together, and without any counter argument from Guthery, demonstrate the existence of evidentiary prejudice to FMC as a result of Guthery's delay.  FMC has also demonstrated economic prejudice, in the form of substantial expenditures incurred between 2000 and 2007 to develop a commercial product based on the '676 Patent and to defend a 2005 lawsuit against EcoLab regarding ownership of the '676 Patent.  *See A.C. Aukerman*, 960 F.2d at 1033 ("[e]conomic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit").

       Guthery has also argued that representations made by FMC's counsel contributed to his delay in filing suit and thus FMC has essentially "waived" any prejudice argument due to its conduct.  (Def.'s Opp'n 18-19.)  Presumably, this is Guthery's attempt to rebut the laches presumption by showing that FMC suffered no prejudice by virtue of his delay.  Guthery has alleged that FMC's counsel told him, in 2005 and 2006, to wait for the conclusion of the FMC-EcoLab litigation before pursuing his own claims against FMC.  FMC denies that such communications were made.  However, even assuming the veracity of Guthery's allegation, Guthery had known of his inventorship claim since 2000 and has offered no legitimate excuse for not pursuing his claim between 2000 and 2005.  *See Serdaveric*, 532 F.3d at 1361 ("in the context of an inventorship action, a plaintiff relying on the unclean hands doctrine to defeat a defense of laches must show not only that the defendant engaged in misconduct, but moreover that the defendant's misconduct was responsible for the plaintiff's delay in bringing suit").  This Court therefore concludes that even if counsel to FMC made these remarks, Guthery's delay in filing suit was not attributable to them.

Finally, Guthery relies heavily on this Court's decision in *Sim-Kar Lighting Fixture Co. v. Genlyte, Inc.*, 906 F. Supp. 967 (D.N.J. 1995) as offering support that Guthery did not "sleep on his rights." In that case, an allegedly omitted inventor brought suit to correct the patent's inventorship fourteen years after the patent's issuance, but only four years after the allegedly omitted inventor became aware of the issuance. The district court denied summary judgment on the basis of laches, where the purported inventor "made a colorable showing" that his delay was not unreasonable because "he was not aware that a patent had been issued and [was] generally unfamiliar with the patent process." *Sim-Kar*, 906 F. Supp. at 972. The court also noted that no evidence regarding prejudice to the patentee had been produced. *Id.* However, the case at bar is distinguishable from the non-binding *Sim-Kar* case in several material respects. First, Guthery was aware of the issuance of the '676 Patent, and his potential claim related to that patent, in 2000, yet failed to initiate any litigation for seven years. In contrast, the inventor in *Sim-Kar* learned of the patent's issuance in 1991 and filed suit at some point in 1995. Second, Guthery, as the inventor and holder of several patents, cannot claim to be ignorant of the patent process. Given Guthery's history with his assertions of inventorship rights over certain EcoLab patents, it was unreasonable for him to continue to delay bringing suit regarding the inventorship of the '676 Patent after he learned of his claim in 2000. Third, FMC has shown, and Guthery has failed to dispute, both evidentiary and economic prejudice resulting from Guthery's delay. Finally, as noted earlier, the application of the laches defense is left to the district court's discretion and "depend[s] on the particular factual circumstances of a case." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876 (Fed. Cir. 1991). Given the particular factual circumstances of this case, the Court is persuaded that the laches defense should bar Guthery's

inventorship claim. Accordingly, summary judgment is awarded to Plaintiff FMC on Guthery's first counterclaim.

        **C.**       **Invalidity or Unenforceability of '676 Patent Counterclaim**

FMC moves to dismiss as nonjusticiable Guthery's second counterclaim, which seeks a declaration that the '676 Patent is invalid and unenforceable pursuant to 35 U.S.C. §§ 102(f) and 256. Guthery suggested that the '676 Patent "should be declared unenforceable due to FMC's failure to disclose information [regarding Guthery's purported contributions to the '676 Patent] to the USPTO that would have been material to a reasonable examiner in deciding whether or not to grant the '676 [P]atent." (Counterclaim ¶ 31.) FMC argues that this Court lacks subject matter jurisdiction to entertain this counterclaim because a controversy as to the infringement of the '676 Patent is required to sustain a declaratory action like Guthery's. The present dispute, FMC maintains, centers on the proper inventorship of the '676 Patent, and there is no controversy regarding infringement of the '676 Patent. Accordingly, FMC posits that the Supreme Court's decision in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007), requires Guthery to plead that he "[took] action that is encompassed by the '676 Patent . . . [in order] for a case or controversy to exist." (Pl.'s Br. 17.)

"The long established rule is that a party seeking a declaration of patent invalidity must, on the "totality of the circumstances," establish that the statutory requirement of 28 U.S.C. § 2201 (that an "actual controversy" exists between the involved parties) is satisfied at the time the complaint is filed." *Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir. 1986). The "actual controversy" justiciability limitation requires a dispute to be "'definite and concrete, touching the legal relations of parties having adverse legal

interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)). In order to demonstrate Article III standing where a claimant seeks declaratory or injunctive relief, the claimant must allege facts demonstrating a substantial likelihood of future injury. *See MedImmune*, 549 U.S. at 128.

Guthery makes several arguments to oppose summary dismissal of this claim. First, he notes that he has standing to pursue his correction of inventorship claim under 35 U.S.C. § 256. However, FMC has not challenged his standing to pursue Guthery's first counterclaim seeking a declaration of inventorship (Pl.'s Reply 12); rather, FMC argues that Guthery lacks standing to contest the validity and/or enforceability of the '676 Patent because no justiciable case or controversy exists. As discussed above, that counterclaim is dismissed due to the applicability of laches. Therefore, the argument is disregarded. Second, Guthery maintains that a justiciable case or controversy exists notwithstanding the absence of a threatened or alleged infringement. Unfortunately, Guthery omits any definition or description of what that controversy may be.

The Court finds that Guthery's second counterclaim is nonjusticiable when considered in the context of a § 256 inventorship action. *See Sensitron, Inc. v. Wallace*, 504 F. Supp. 2d 1180 (D. Utah 2007) (in an action for a correction of inventorship pursuant to § 256, holding a counterclaim seeking invalidity of the patent to be non-justiciable). As another district court observed, "Congress conferred no jurisdiction on the federal courts to adjudicate a patent's validity in a Section 256 action to correct inventorship. Considering this, the Court finds that it would be unusual, and thus, unlikely, for Congress to have intended to confer such jurisdiction

through the Declaratory Judgment Act. . . Expanding the correction of inventorship action to a patent validity action would be premature, and doing so under the guise of the Declaratory Judgment Act would improperly facilitate gamesmanship among the parties." *Id.* at 1185 (internal quotations and citations omitted); *see also Maxwell v. Stanley Works,* 2006 WL 1967012 (M.D. Tenn. 2006), *judgment aff'd*, 2008 WL 116345 (Fed. Cir. Jan. 8, 2008) (where plaintiff brought a *pro se* action against patentee and licensee alleging that he was the true inventor of patented invention, dismissing plaintiff's declaratory judgment claim seeking a declaration of invalidity for lack of case of controversy since there was no showing that the plaintiff was engaging or had concrete plans to engage in activity that would infringe the patent). The Court accordingly dismisses this claim.

### D.   State Law Counterclaims and Statutes of Limitation

Guthery also asserts misappropriation and unfair competition claims pursuant to Texas state law.[6] FMC argues that both claims are barred by the respective statutes of limitations, and that the statutory period began to run on October 12, 1993 when FMC filed the '676 Patent without listing Guthery as an inventor. Guthery has argued that his state law claims did not accrue until FMC obtained a favorable jury verdict against Ecolab on the '676 Patent in 2007. (Def.'s Opp'n 25.) In fact, Guthery has represented that the jury verdict is the sole basis for his state law claims and that he is not advancing a "continuing tort" theory of liability. (*Id.* 25, 27.)

---

[6] FMC has not challenged Guthery's choice of Texas law as governing his counterclaims, though it notes that a significant number of Guthery's factual allegations took place in Oklahoma and New Jersey. However, a footnote in FMC's brief contends that the result would be the same had Guthery brought his claims pursuant to New Jersey or Oklahoma law. Further, FMC has briefed the issue under Texas law. Therefore, the Court considers Guthery's misappropriation and unfair competition laws under Texas law.

While Guthery's theories of liability may be novel and creative, this Court does not consider them to be accurate iterations of the present law.  First, even if Guthery's cause of action accrued at the time of the 2007 jury award, FMC is correct that Guthery had no interest in the 2007 jury award unless he is deemed an inventor of the '676 Patent.  As discussed above, Guthery's inventorship claim is barred by operation of the laches defense.  Second, the Court finds that Guthery's misappropriation and unfair competition claims accrued at the latest in 2000, when, by his own admission, Guthery became aware of his potential interest in the '676 Patent.

Under Texas law, Guthery must have filed the instant misappropriation and unfair competition actions within two years of the allegedly wrongful act.  As the Fifth Circuit noted,

> claims for unfair competition, unfair trade practices, conversion, tortious interference with contract, misappropriation of trade secrets, and conspiracy must be brought within two years from the time the cause of action accrues.  In general, a cause of action accrues and limitations begin running when a wrongful act causes a legal injury.  The discovery rule, however, defers accrual of certain causes of action until the plaintiff knew, or exercising reasonable diligence, should have known of the wrongful act causing injury.  The discovery rule affords protection in only limited instances, applying in (1) cases of fraudulent concealment; and (2) when the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable.

*Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523-24 (5th Cir. 2001) (applying Texas law (internal citations omitted)).  Therefore, as Guthery was aware that he might have a claim related to the '676 Patent in 2000, the statute of limitations expired in 2002 (at the latest) unless Guthery can demonstrate either fraudulent concealment or inherent undiscoverability of the injury.  Guthery has made no arguments regarding either exception.

In addition, Guthery argues that his unfair competition counterclaim is premised on a

theory of misappropriation of "the business, licensing, and exploitation of the proprietary sanitation process," and not based on the misappropriation of a trade secret as FMC appears to have assumed. (Def.'s Opp'n 24.) However, Guthery has failed to provide any case law or argument suggesting that the statutory time period for a misappropriation claim differs in any way from a misappropriation of trade secrets claim. In fact, Guthery has failed to cite any cases on this issue at all.

Guthery's final argument to avoid dismissal of his state law claims on statute of limitations grounds is that the doctrine of equitable tolling should apply to rescue his time-barred claims. Equitable tolling is "typically extended . . . only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Moreover, the application of equitable tolling has traditionally been limited to "situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. [Courts] have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* The Court finds that equitable tolling does not operate to salvage Guthery's state law counterclaims. As discussed above, even assuming that FMC's counsel made the representations Guthery has alleged, those conversations did not occur until 2005 or 2006, five or six years after Guthery has admitted he knew of claims related to his potential interest in the '676 Patent, and three or four years after the two year statutory period had expired. Guthery cannot credibly claim that FMC's "trickery" or "misconduct" in 2005 or 2006 induced him to rest on his rights for another two or three years, after the statutory period had already expired. Accordingly, Guthery's state law claims are dismissed as time barred.

**III.     Conclusion**

       For the reasons described above, FMC's motion for summary dismissal of Guthery's four counterclaims is granted.  An appropriate Order accompanies this Opinion.


Dated: April 17, 2009